UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ROSELLA PETERS,                                                      CV 07-1361-KI

                    Plaintiff,                              OPINION AND ORDER

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.

_____

KING, Judge:

        Plaintiff Rosella Peters brings this action pursuant to the Social Security Act, 42 U.S.C.

§ 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her claim for Social Security Disability Insurance benefits.  For the

reasons set forth below, I AFFIRM the Commissioner's decision

PAGE 1 - OPINION AND ORDER

## I. Procedural Background

On September 30, 2003, Plaintiff filed an application for disability insurance benefits, alleging disability since June 12, 2003, due to back pain, fibromyalgia, carpal tunnel syndrome, rheumatoid arthritis, osteoarthritis, and right shoulder pain. On November 21, 2003, the Social Security Administration denied that application. Plaintiff did not timely appeal.

On April 23, 2004, Plaintiff filed another application for disability insurance benefits, alleging disability since June 12, 2003, due to back pain, fibromyalgia, carpal tunnel syndrome, leg cramps, and shoulder problems. The Social Security Administration denied Plaintiff's application on June 15, 2004, and again upon reconsideration on September 17, 2004. Plaintiff timely requested a hearing before an administrative law judge. On July 24, 2006, Plaintiff appeared and testified at a hearing before Administrative Law Judge (ALJ) Ralph W. Jones. At the hearing, Plaintiff amended her alleged disability onset date to May 13, 2003. A vocational expert, Gail J. Vogel, also testified at the hearing.

On November 7, 2006, ALJ Jones issued a decision concluding that Plaintiff was not disabled and retained the residual functional capacity to perform her past relevant work. On July 11, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ decision.

## II. Factual Background

*A. Plaintiff's History*

At the time of the hearing before the ALJ, Plaintiff was 58 years old. Tr. 275.[1] She is 5 foot 6 inches tall, and weighs approximately 254 pounds. Tr. 17. She has a high school diploma.

---

[1]"Tr." refers to the certified copy of the Transcript of Administrative Record submitted by Defendant on February 27, 2008, pursuant to 42 U.S.C. § 405(g).

Tr. 275.  From 1966 through 1993, she worked as a Telephone Switchboard Operator.  Tr. 135,

275.  Plaintiff claims that she began having carpal tunnel and arthritis pain in March 1991, and

the record indicates that she first applied for Social Security disability benefits in January 1999.

Tr. 17, 68, 78, 134, 276.  From 1999 through June 2003, Plaintiff worked as a Special Education

Assistant.  Tr. 278.  On May 13, 2003, the alleged disability onset date, a student threw a chair at

Plaintiff and struck her in the back of the leg.  She claims that she has been unable to work since

the assault, due to progressively worsening pain.  Plaintiff also claims that she is unable to

perform many ordinary daily activities without assistance.  Tr. 288-89.

    *B.  Medical Record*

On June 12, 2002, Michael Hudson, M.D., assessed right hip pain with right leg

cramping, but noted "no obvious precipitant."  Tr. 217.  Dr. Hudson noted that Plaintiff was

heavyset.  He refilled Plaintiff's pain medication and suggested an x-ray to rule out significant

arthritis.  The x-ray revealed "no evidence of acute skeletal injury."  Tr. 224.

On August 16, 2002, Plaintiff visited the emergency room due to moderate to severe back

pain and spasms.  Tr. 204-07.  The discharge diagnosis was acute back pain and muscle spasm.

Tr. 207.

At a November 14, 2002 visit with Dr. Hudson, Plaintiff again complained of back and

shoulder pain.  Tr. 215.  She stated that she found it difficult to get her hand to the top of her

head.  Id.  Dr. Hudson noted that Plaintiff looked "mildly uncomfortable."  Id.  He opined that

Plaintiff's back pain was "muscular," and that her shoulder pain "certainly seems to be a rotator

cuff strain, but again without an obvious precipitant."  Id.  Dr. Hudson suggested physical

therapy and continued pain medications.  He also signed a note that she not work until November

PAGE 3 - OPINION AND ORDER

18, 2002. Id.

On December 4, 2002, Lauren Roberts, M.D., noted worsening back pain bilaterally, perhaps spinal stenosis. Tr. 214. Plaintiff reported "lots of pain," and that physical therapy was not working. Id. A December 5, 2002 diagnostic imaging revealed a "moderate sized disc protrusion . . . resulting in a mild ventral defect" at T12-L1; a "mild diffuse disc bulge . . . resulting in only mild central defect" at L3-L4; a "mild diffuse bulge resulting in mild ventral defect" at L-L5; and a "mild disc bulge . . . with mild ventral defect" at L5-S1. Tr. 220-21. David Ciaverella, D.O., noted "[n]o evidence of central canal stenosis or conspicuous lateral recess stenosis." Tr. 221.

At her December 10, 2002 follow-up exam, Liana Corliss, F.N.P. noted continued back pain, but "no acute distress." Tr. 213. Corliss also noted a decreased range of motion in Plaintiff's back and leg, but found her motor strength in her extremities was normal. Id. Relying on Plaintiff's recent MRI, Corliss suggested "possible radiculopathy or possible neurological symptoms secondary to disc protrusion." Id. She referred Plaintiff to a neurosurgeon.

Portland Family Clinic records show that on April 18, 2003, Plaintiff reported chronic back pain and fibromyalgia. Tr. 211. Plaintiff weighed 248 pounds.

On June 18, 2003, Dr. Hudson noted a contusion on Plaintiff's left calf, which apparently was the result of being struck in the back of the leg with a metal chair in May 2003. Tr. 210. Dr. Hudson noted that Plaintiff continued to work in spite of the pain in her calf. Id. Dr. Hudson concluded that there was "no need for any intervention at this time." Id.

On September 9, 2003, Plaintiff reported worsening right shoulder and back problems that she felt were related to the May 2003 calf injury. Tr. 209. Dr. Hudson noted that Plaintiff

PAGE 4 - OPINION AND ORDER

"states she cannot get her right upper extremity above horizontal without hurting and she points to the area of the deltoid but a fairly general area." Id. He opined that the right shoulder pain was "probably a rotator cuff strain," and the low back pain was probably muscular. Id.

On November 18, 2003, state Disability Determination Services reviewing medical source, Martin Kehrli, M.D., opined that Plaintiff could lift 20 pounds occasionally, ten pounds frequently, stand and/or walk for about six hours in an eight-hour work day, and sit about six hours in an eight-hour workday. Tr. 226-31. Aside from those limitations and limited ability to reach all directions, Dr. Kehrli thought Plaintiff could operate hand or foot controls without limitation. Tr. 227-28.

At a December 11, 2003 visit to Dr. Hudson, Plaintiff complained of shoulder and back pain. Tr. 257. She stated that she thought the pain was related to the May 2003 incident, and she felt she could no longer work. Id. Dr. Hudson thought she required a visit with a rehabilitation doctor. He also suggested that she be evaluated by a psychiatrist. Id.

On May 19, 2004, Kim Webster, M.D., conducted a consultive examination. Tr. 226-31. She diagnosed Plaintiff with hypertension, restless leg syndrome, low back pain without any neurologic deficits, frozen shoulder syndrome, and obesity. Tr. 236. Dr. Webster opined that Plaintiff "unlikely has fibromyalgia." Id. In her functional assessment, Dr. Webster noted that "the current condition of [Plaintiff's] right shoulder would make reaching almost impossible." Id. Dr. Webster noted, however, that "there may be a fair component of poor self-motivation and maybe even poor effort today." Dr. Webster further opined that "[t]here does not seem to be any objective evidence of an inability to stand, walk, or sit." Id. Though Plaintiff used a cane, Dr. Webster saw "[n]o evidence for need of an assistive device." Id. Dr. Webster noted that although

Plaintiff's "obesity would make kneeling, balancing, crawling, and stooping fairly difficult,"
Plaintiff was "able to stand and walk for about six hours during an eight-hour day, and sit for six
hours during an eight-hour day. . . . [Plaintiff's] ability to lift and carry with her left arm is
unimpeded.  She should be limited to carry less than 10 pounds occasionally and frequently with
her right." Id.

On June 14, 2004, Dr. Kehrli reviewed Plaintiff's file again and affirmed his earlier
functional assessment.  Tr. 237-42.  On September 14, 2004, Sharon Eder, M.D., reviewed
Plaintiff's file and affirmed Dr. Kehrli's functional assessment.  Tr. 242.

On October 4, 2004, Plaintiff visited Peter Reagan, M.D., who noted her history of back
pain, radiating down her leg, fibromyalgia, and hypertension.  Tr. 256.  Dr. Reagan also noted that
Plaintiff was "in the process of applying for disability, which was in response to a work related
injury about 1-1/2 years ago in which a student threw a chair at her, hitting her in the back." Id.
Dr. Reagan observed that Plaintiff appeared "mildly uncomfortable," but noted that Plaintiff was
not a surgical candidate.  Id.

On October 28, 2004, Plaintiff visited Scott Smith, M.D., who diagnosed a contusion and
sprain of the right foot and ankle.  Tr. 255.  He noted that Plaintiff was taking Vicodin for other
pains related to fibromyalgia.  Id.  Dr. Smith made no reference to shoulder or back pain.

On December 29, 2004, Plaintiff visited Dr. Reagan and reported being lightheaded,
having pins and needles feeling in her legs, and ongoing back and leg pain.  Tr. 253.  Dr. Reagan
noted Plaintiff appeared very tired, but that "she does have fairly good back range of motion."
Id.  Dr. Reagan also noted a "significant sequence of situational disturbances complicating her
fibromyalgia." Id.  Dr. Reagan noted Plaintiff's grief as a result of recent losses in the family,

diagnosed an "almost certain mood disorder," and suggested antidepressant therapy. Id.

On March 16, 2005, Dr. Reagan noted "ongoing depression," trouble sleeping, and grief associated with Plaintiff's loss of her mother. Tr. 252. His notes make no reference to shoulder pain, back pain, hand pain, or depression. On April 27, 2005, Plaintiff saw Dr. Reagan again for respiratory problems. Tr. 251. Again, his notes make no reference to shoulder or hand pain, or depression. On June 16, 2005, Dr. Reagan again noted Plaintiff's respiratory problems, but made no reference to shoulder or hand pain, or depression. Tr. 250.

Nearly a year later, on April 19, 2006, Dr. Reagan noted that Plaintiff was in the middle of a drawn out evaluation for disability. Tr. 246. "She has had several chronic problems including arthritis in her hands and legs, carpal tunnel syndrome, fibromyalgia and back pain following injuries." Id. Dr. Reagan noted that Plaintiff's back pain was exacerbated following the May 2003 calf injury. Tr. 246. Since then, her main pain has involved right shoulder, back., and leg pain. Id. Dr. Reagan noted that Plaintiff stopped taking antidepressants. Id. Plaintiff "has significant tenderpoints, [which] certainly fits the criteria for fibromyalgia." Id. Dr. Reagan assessed Plaintiff's back range of motion as 25-50% of normal. He opined that "getting her back to work under the circumstances will be very steep uphill, but not impossible. I would certainly be supportive of consideration for total disability." Tr. 247.

Dr. Reagan's June 30, 2006 disability assessment indicates that Plaintiff suffers from osteoarthritis, fibromyalgia, hypertension, and depression, causing hand and back pain. Tr. 243-245. Dr. Reagan opined that Plaintiff was limited to lifting and carrying less than ten pounds on a frequent or occasional basis, standing and/or walking less than two hours in an eight-hour workday, sitting about two hours in an eight-hour work day, and avoidance of all postural

positioning. Tr. 244. Dr. Reagan also opined that Plaintiff would likely miss more than two days of work each month from a sedentary occupation. Tr. 245.

*C. ALJ Hearing*

At the July 24, 2006 hearing before Administrative Law Judge Ralph Jones, Plaintiff testified that although she had back pain while she was working as a Special Education Assistant, her symptoms have progressively worsened since she was struck by a chair in May 2003. Tr. 278-80. She testified that because of her pain, she is unable to stand with a cane for more than a half hour to 45 minutes out of an eight-hour work day, that she can only walk one or two blocks without pain, and that she can only sit for about 45 minutes at a time. Tr. 282-85. She also stated that she has to lie down for most of the day because of the swelling in her feet and legs, and her back pain. Tr. 285. Plaintiff believes she is unable to do her previous work as a telephone switchboard operator because she cannot sit, reach, or handle objects, as required by the job. Tr. 276. She also believes she can no longer be a special education assistant because of the amount of time that she would have to stand and the weight she would have to lift. Tr. 278.

Gail Vogel, a Vocational Expert, also testified at the hearing. Vogel classified Plaintiff's prior work as a telephone switchboard operator as work involving sedentary exertion. Tr. 295. Vogel classified Plaintiff's work as a special education assistant as light work, or medium exertion. Tr. 294.

ALJ Jones then posed a hypothetical to the vocational expert, describing an individual age 55 at onset, with a twelfth grade education, and a vocational background as a telephone switchboard operator and a special education assistant:

[T]he individual could perform at light residual functional capacity, occasionally

lifting 20 pounds, frequently 10, pushing and pulling unlimited commen[surate] therewith, postural limitations to include only occasional climbing both of ramps and stairs and ladders, ropes, and scaffolding, occasional stooping and occasional crouching, otherwise frequent balancing, kneeling, and crawling, manipulative limitations to include limited reaching including overhead, otherwise unlimited handling, fingering, and feeling. No other limitation. If we were to accept this assessment as accurate, could the individual perform past relevant work?

Tr. 295-96. Vogel responded, "this individual would be able to perform both of the positions described within the context of those hypothetical limitations." Tr. 296.

The ALJ's second hypothetical indicated the same individual with the additional limitations of occasional overhead reaching and frequent shoulder-level reaching with the right arm and only occasional kneeling and crawling. Tr. 296-97. Vogel again responded that the person would be able to perform past relevant work. Tr. 297. The ALJ's third hypothetical described a similarly situated individual, but one who could lift less than ten pounds occasionally and frequently, walk and/or sit less than two hours in an eight-hour day, pushing and pulling in the lower extremities, all postural activities limited to never, and the person would miss more than two days per month from a sedentary job. Tr. 297-98. Vogel responded that such a person could not perform past relevant work, nor any other work. Tr. 298.

### III. Legal Standards

The Social Security Act provides for disability insurance to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The claimant bears the burden of proving disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled

only if her physical or mental impairments are of such severity that she is not only unable to do

her previous work, but cannot, considering her age, education, and work experience, engage in

any other kind of substantial gainful work in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

     The Commissioner has established a five-step sequential evaluation process for

determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater,

81 F.3d 821, 828 n.5 (9th Cir. 1996).  First, the Commissioner determines whether the claimant

is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, the

claimant is not disabled.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520, 416.920(c).  If the claimant does not have one

or more severe impairments, the claimant is not disabled.  If the impairment is severe, the

Commissioner proceeds to the third step to determine whether the impairment is equivalent to

one of a number of listed impairments that the Commissioner acknowledges are so severe as to

preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment

"meets or equals" one of the listed impairments, the claimant is conclusively presumed to be

disabled.  If not, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past.  If so, the claimant is not disabled and disability benefits are denied.  20 C.F.R. §§

404.1520(e),  416.920(e).  If the claimant is unable to perform work performed in the past, the

PAGE 10 - OPINION AND ORDER

Commissioner proceeds to the fifth and final step to determine if the claimant can perform other

work in the national economy in light of his or her age, education, and work experience.  The

claimant is entitled to disability benefits only if she is not able to perform other work.  20 C.F.R.

§§ 404.1520(f), 416.920(f).

At steps one through four, the burden of proof rests with the claimant.  At step five, the

burden shifts to the Commissioner to show that the claimant can perform jobs that exist in

significant numbers in the national economy.  The Commissioner may satisfy this burden through

the testimony of a vocational expert, or by reference to the Medical-Vocational Guidelines, 20

C.F.R. Part 404, Subpart P, Appx. 2.  If the Commissioner demonstrates a significant number of

jobs exist in the economy that the claimant can perform, the claimant is not disabled.  If the

Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. §§ 404.1520(f)(1),

416.920(f)(1).

Judicial review of the Commissioner's decision is guided by the same standards.  42

U.S.C. §§ 405(g) and 1383(c)(3).  This court must affirm the Commissioner's decision if it is

based on proper legal standards and the findings are supported by substantial evidence in the

record as a whole.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld if it is a rational interpretation of the

evidence, even if  "the evidence is susceptible to more than one rational interpretation."

PAGE 11 - OPINION AND ORDER

Andrews, 53 F3d at 1039-40.  The reviewing court may not substitute its judgment for that of the

Commissioner.  Robbins v. SSA, 466 F.3d 880, 882 (9th Cir. 2006).  Harmless errors do not

change the outcome of a case and do not warrant reversal of the ALJ's decision.  Stout v.

Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV. The ALJ's Findings

At step one of the disability evaluation, the ALJ found that Plaintiff met the insured status

requirements as set forth in the Social Security Act through December 31, 2008.  Tr. 16.  The

ALJ also determined that Plaintiff has not engaged in substantial gainful activity since June 12,

2003, the original alleged onset date.  Id.  At step two, the ALJ determined that Plaintiff's

degenerative disc disease and morbid obesity are severe impairments.  Id.  The ALJ concluded,

however, that her alleged impairment involving the use of her hands was not severe because it is

not a medically determinable impairment and her complaints were not credible.  Id.  The ALJ

also found that Plaintiff's depression, shoulder pain, and fibromyalgia were not severe

impairments.  Id.  At step three, the ALJ found that Plaintiff does not have an impairment that

meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, app. 1.  Tr. 16-17.  The

ALJ then determined that Plaintiff had the residual functional capacity to perform a limited range

of light work.  Tr. 17.  The ALJ found that Plaintiff's statements regarding her ability to work

were not credible in light of the lack of medical treatment and her daily activities.  Tr. 17-20.  At

step four, the ALJ found that Plaintiff is capable of performing past relevant work as a special

education assistant and telephone switchboard operator.  Tr. 20-21.  Accordingly, the ALJ

concluded that Plaintiff is not disabled.  Tr. 21.

## V. Discussion

Plaintiff argues that the Commissioner's final decision denying her disability claim should be reversed because the ALJ:  (1) failed to reopen Plaintiff's prior application for disability benefits, which the Commissioner denied and Plaintiff failed to timely appeal; (2) erred in finding Plaintiff's alleged fibromyalgia, depression, and hand and shoulder pain to be non-severe; (3) improperly discounted the opinions of Plaintiff's treating physician; (4) improperly found Plaintiff's testimony not entirely credible; and (5) erred in finding that Plaintiff could return to past relevant work.  I disagree.

### A. Reopening Plaintiff's Prior Application for Disability Benefits

Plaintiff argues that the ALJ erred in failing to reopen her prior application for disability benefits because her most recent application includes evidence of obesity and depression, which are "'changed circumstances' sufficient to rebut any presumption of nondisability."  Pl.'s Reply, at 2.  This argument lacks merit.

The regulations provide that the Social Security Administration "may reopen a final determination or decision . . . , or [the claimant] may ask that a final determination or a decision" be reopened.  20 C.F.R. § 404.987 (emphasis added).  "A determination, revised determination, decision, or revised decision may be reopened—(a) [w]ithin 12 months of the date of notice of the initial determination, for any reason . . . ."  20 C.F.R. § 404.988 (emphasis added).  Even if Plaintiff had filed a request to reopen her prior application (and there is no evidence that she did), the permissive language of these regulations makes clear that the agency's decision to reopen a prior claim is "purely discretionary."  Taylor v. Heckler, 765 F.2d 872, 877 (9th Cir. 1985); see also Monger v. Bowen, 817 F.2d 15, 17-18 (4th Cir. 1987) (the operative word in § 404.987-88

is 'may'").  In any event, a refusal to reopen Plaintiff's prior application is not subject to judicial review because discretionary decisions are not "final decisions" within the meaning of the Social Security Act, 42 U.S.C. § 405(g). Heckler, 765 F.2d at 877.  As such, this court has no jurisdiction to review the ALJ's decision not to reopen Plaintiff's prior claim. Id.

Plaintiff's reliance on Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988) is misplaced. In that case, the Ninth Circuit held that *res judicata* did not bar a claimant's second application for disability where the new application presented new facts to demonstrate that the prior determination of disability was incorrect.  Id.  In rejecting the Commissioner's *res judicata* claim, the Court noted that the ALJ had effectively reopened the prior claim by considering the merits of the earlier claim.  Id.

In stark contrast to Gregory, neither the Commissioner nor the ALJ in this case ever claimed that *res judicata* barred any of Plaintiff's claims.  To the contrary, the record demonstrates that the ALJ considered all of the evidence, and explicitly addressed the merits of each of Plaintiff's claimed impairments during the period of time covered by both applications. In so doing, the ALJ effectively reopened Plaintiff's prior application and considered the merits of Plaintiff's prior and current applications for disability.  Cf. Gregory v. Bowen, 844 F.2d at 666.  Plaintiff's argument is without merit.

## B. ALJ's Determination of Plaintiff's Severe Impairments

The ALJ found that Plaintiff's degenerative disc disease and morbid obesity were severe impairments, but that her alleged impairment involving the use of her hands was not severe because it is not a medically determinable impairment and her complaints were not credible.  The ALJ also found that her depression, right shoulder sprain, and fibromyalgia were not severe.

PAGE 14 - OPINION AND ORDER

Plaintiff argues that the ALJ erred in finding those impairments non-severe.  I disagree.

As noted, the individual claiming disability bears the burden of proving a severe impairment.  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); Social Security Ruling ("SSR") 96-3p, available at 1996 WL 374181, at *1 ("an impairment that is 'not severe' must be a slight abnormality (or combination of slight abnormalities that has no more than a minimal effect on the ability to do basic work activities").  The question is whether the impairment has "no more than a minimal effect on an individuals ability to do work."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

Here, the ALJ's findings regarding the severity of Plaintiff's impairments are supported by substantial evidence in the record.  The ALJ noted that although Plaintiff was allegedly diagnosed with fibromyalgia years ago, there is no trigger point confirmation of the disorder in the record.  The ALJ also noted that fibromyalgia did not prevent her from working through 2003.  In addition, Dr. Webster concluded in May 2004, that Plaintiff "unlikely has fibromyalgia." Tr. 236.  Plaintiff points to Dr. Reagan's notes, which reflect a long-standing diagnosis of fibromyalgia.  The mere diagnosis of an impairment, however, is not sufficient to sustain a finding of disability.  Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  Further, Dr. Reagan's brief assessment is not supported by any clinical evidence and appears to be premised solely upon Plaintiff's properly discredited accounts of her symptoms and limitations. See infra.  As such,  the ALJ was entitled to disregard Dr. Reagan's opinion.  Flaten v. Sec. of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995).

With respect to Plaintiff's alleged depression, the ALJ noted although Plaintiff was

understandably depressed when people close to her died, she sought no counseling or medication, except for a brief period of time.  The ALJ also noted that although Dr. Reagan diagnosed an "almost certain mood disorder," his notes from Plaintiff's April 2005 and June 2005 visits make no mention of depression.  Compare Tr. 253, with Tr. 250-51.  That Dr. Reagan diagnosed Plaintiff with a "mood disorder" simply does not necessitate a finding that her depression is a severe impairment.

Finally, substantial evidence supports the ALJ's finding that Plaintiff's shoulder pain was not severe.  In 2003, Plaintiff was diagnosed with a rotator cuff strain in her right shoulder.  Tr. 209.  The ALJ noted that a "strain" is by its nature a short term problem.  Tr. 18.  In her May 19, 2004 assessment, Dr. Webster attributed Plaintiff's poor range of motion in her shoulder to poor effort.  Tr. 236.  I conclude that the ALJ's findings regarding Plaintiff's shoulder pain are supported by substantial evidence.[2]  Accordingly, this court may not substitute its judgment for that of the ALJ.  Key, 754 F.2d at 1549.  I find no error.

C. Plaintiff's Subjective Testimony

Plaintiff contends that the ALJ improperly discounted her subjective testimony regarding the effects of her impairments on her ability to work.  A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged . . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A)

---

[2]Although not explicitly mentioned by the ALJ, I note that Plaintiff's treatment notes from October 4, 2004, October 28, 2004, December 29, 2004, March 16, 2005, April 27, 2005, and June 16, 2005 make no reference to any shoulder pain.  See Tr. 250-56.  Moreover, there is no medical record of any further shoulder pain until April 19, 2006, nearly a year later.  Tr. 246.

(1988)); see also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need

not produce objective medical evidence of the symptoms, their severity, or the causal relationship

between the medically determinable impairment and the symptom. Smolen v. Chater, 80 F.3d

1276, 1281-82 (9th Cir. 1996).

      The ALJ is responsible for evaluating the credibility of the claimant's testimony

regarding the severity of her symptoms. Id. If there is no affirmative evidence of malingering,

the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony

regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). To

reject a claimant's testimony, the ALJ must provide "specific, cogent reasons for the disbelief"

and "identify what testimony is not credible and what evidence undermines the claimant's

complaints." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). In assessing a claimant's

credibility, the ALJ may rely on: (1) ordinary techniques of credibility evaluation, such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other

testimony by the claimant that appears less than candid; (2) an unexplained or inadequately

explained failure to seek treatment or follow a prescribed course of treatment; and (3) the

claimant's daily activities. Smolen, 80 F.3d at 1284 (citations omitted).

      Here, Plaintiff provided objective medical evidence of an impairment and there is no

affirmative evidence of malingering. Thus, the issue is whether the ALJ provided clear and

convincing reasons for discounting Plaintiff's testimony regarding the effect of her impairments

on her ability to work. I find that he did.

      At the hearing, Plaintiff testified that she would be unable to do her job as a telephone

switchboard operator because she cannot sit, reach, or handle objects due to her condition. Tr.

276.  She also believes that she can no longer be a special education assistant because of the amount of time she would have to stand and the weight she would have to lift.  Tr. 279-81.  She testified that her symptoms have become progressively worse since she was hit in the leg with a chair.  Tr. 280.  Plaintiff testified that she can stand with a cane for only a half-hour at a time, for a total of 45 minutes in an eight-hour day.  Tr. 282.  She stated that she cannot walk more than a block without pain, can sit for only 45 minutes at a time, and has to lie down on her side for a majority of the day due to swelling in her feet and legs and back pain.  Tr. 283-85.  She also testified that she cannot perform ordinary daily activities.  She believes that she cannot do "any lifting" due to pain in her hands and both of her shoulders.  Tr. 286.  Plaintiff also testified that she has suffered from depression since 2003, but that she has taken anti-depressants only periodically due to financial difficulties and side effects.  Tr. 284.

The ALJ found that the medical treatment records "did not support Plaintiff's self-imposed restrictions" for several reasons.  First, the ALJ noted that Plaintiff's January 1999 disability claim was belied by her full-time work from October 1999 through June 2003.  The ALJ also observed that Plaintiff continued to work from 1999 through 2003 despite her obesity and documented degenerative disc disease.  The ALJ noted that the there is no record of psychological care, counseling, or the use of medication except for a brief period, which tended to undermine Plaintiff's claim of debilitating depression.  The ALJ found that there was no medical evidence to support her alleged arthritic hands.  Indeed, she acknowledged that she had received no such treatment.  Tr. 292.  With respect to her right shoulder pain, the ALJ noted that

her primary physician diagnosed a rotator cuff "strain" in 2003.[3]  As the ALJ noted, a strain is by

its nature a temporary problem.  Regarding her back pain, the ALJ noted that the 2002 diagnosis

of degenerative disc disease did not preclude her from working, and there was no objective

medical documentation to substantiate her assertion that her back and shoulder symptoms

worsened after the May 2003 chair incident.[4]  The ALJ also noted that Plaintiff's testimony about

her ability to complete ordinary daily activities was inconsistent with third party observations,

and her earlier statements about cleaning, doing laundry, ironing, and shopping for groceries.

 Finally, the ALJ noted that in May 2004, Dr. Webster found no objective evidence of

Plaintiff's inability to stand, walk, sit for six hours a day and attributed her poor range of motion

to poor self-motivation and effort.  Although this conflicted with Dr. Reagan's June 2006

assessment, the ALJ thought the lack of medical treatment from 2004 to 2006 undermined the

extent of  the symptoms alleged by Plaintiff.  Despite Plaintiff's reference to the cane, Dr.

--------

 [3] At the hearing, Plaintiff also claimed that she could not use her left shoulder because it
was "deteriorating."  There is no objective medical evidence in the record to support that
conclusion.  Based on his examination of Plaintiff, Dr. Webster opined that she had unlimited
ability to lift or carry weight in her left arm.  Moreover, there is no medical or treatment record of
any shoulder pain from October 2004 to April 2006.  Although Dr. Hudson recommended that
she see a rehabilitation doctor in December 2003, Tr. 257, there is no evidence that she followed
that advice.  Plaintiff's unsubstantiated testimony regarding her left shoulder, the lack of
supporting medical evidence for Plaintiff's complaint regarding her right shoulder, her failure to
follow a prescribed course of treatment, and the fact that she used both arms to support herself on
a cane raise further doubts about the veracity of her testimony regarding her right shoulder pain.

 [4]In addition to the reasons cited by the ALJ, the medical record reflects an inconsistency
in Plaintiff's statements regarding the May 2003 calf injury, which Plaintiff claims exacerbated
her shoulder and back pain.  A month after the incident, on June 18, 2003, Plaintiff saw Dr.
Hudson and reported being hit in the "back of the left calf" with a metal chair.  Tr. 210.  Dr.
Hudson's notes do not reflect any injury or pain related to Plaintiff's shoulder or back.  A year
and a half later, however, she apparently told Dr. Reagan that the chair "hit[] her in the back." Tr.
256.  This discrepancy further undermines Plaintiff's credibility.

Webster noted that she did not need one.

On this record, I find that the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective complaints. Those reasons are supported by substantial evidence in the record. Accordingly, the ALJ did not err in finding Plaintiff not entirely credible.

D. Rejection of Dr. Reagan's Opinions

In a June 30, 2006 questionnaire, Plaintiff's treating physician, Dr. Reagan, opined that Plaintiff was limited to lifting or carrying less than 10 pounds, and could stand, walk, or sit a total of less than two hours in an eight-hour day. Tr. 243-45. Dr. Reagan also stated that Plaintiff should "never" engage in postural and manipulative activities, and that she would frequently be absent from even a sedentary job. Id. Plaintiff argues that the ALJ erred in failing to give controlling weight to Dr. Reagan's opinion. I disagree.

The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. Thomas v. Barnhart, 278 F.3d 947 (9th Cir. 2002). A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Flaten v. Sec. of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that the ALJ may reject any doctor's opinion that is "not supported by clinical evidence" and "based on" a claimant's properly discredited "subjective complaints").

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

"When there is a conflict between the opinions of a treating physician and an examining physician, as here, the ALJ may disregard the opinion of the treating physician only if he sets forth 'specific and legitimate reasons supported by substantial evidence in the record for doing so.'" Id. (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). The contrary opinion of a non-examining medical expert, by itself, does not constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion. Tonapetyan, 242 F.3d at 1149. It may, however, constitute substantial evidence when it is consistent with other evidence in the record. Id.

Here, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, for not accepting Dr. Reagan's opinion regarding Plaintiff's alleged disability. First, the ALJ noted that Dr. Reagan and a consulting examining physician, Dr. Webster, provided specific residual functional restrictions that were "diametrically opposed." Tr. 19. After examining Plaintiff and reviewing her treatment record in May 2004, Dr. Webster concluded that there was no objective evidence of inability to stand, walk, or sit for six hours in an eight-hour day. Dr. Webster noted that Plaintiff's gait and coordination were normal, and thought her poor hand strength and mobility were the result of poor effort and motivation.[5] He opined that her obesity would limit her ability to kneel, crawl, balance, and stoop, and that she had unlimited ability to lift or carry weight with her left arm although her right arm was limited to less than ten pounds.

In sharp contrast, Dr. Reagan stated in June 2006, that Plaintiff is limited to standing,

---

[5]Although not noted by the ALJ, Dr. Webster observed Plaintiff was in "no acute distress. . . . She is able to get on and off the examination table easily. She is able to remove and replace her shoes easily. There was seemingly poor effort at times." Tr. 233.

walking, or sitting less than two hours in an eight-hour day.  Dr. Reagan opined that Plaintiff was

extremely limited in both upper and lower extremities, and should "never" engage in any postural

or manipulative activities.  The ALJ noted that Dr. Reagan concluded "without citing any

specific medical basis, that Plaintiff cannot work full time, would be frequently absent, and

would have difficulty concentrating." Tr. 19.  The ALJ also noted, "Dr. Reagan's stated basis for

this sweeping RFC is 'hand and back pain.'" Id.

The ALJ thought that Dr. Reagan's June 2006 assessment differed significantly from his

treatment notes.  On October 4, 2004, Dr. Reagan noted that Plaintiff "appears mildly

uncomfortable."  On June 16, 2005, he noted that Plaintiff "appears fairly comfortable," and

makes no note of back, shoulder, or leg pain.[6]  On November 14, 2005, there is no mention of

pain or restriction in his notes.  In addition, the ALJ observed that Dr. Reagan never performed

any blood tests to confirm arthritis or inflammation and never conducted a trigger point

confirmation to confirm the degree of Plaintiff's fibromyalgia.  The ALJ also found that non-

examining consultant Dr. Kehrli's assessment was consistent with Dr. Webster's, and

contradicted Dr. Reagan's assessment.

The ALJ gave specific and legitimate reasons for rejecting Dr. Reagan's opinion that

Plaintiff is unable to do any work.  Those reasons are supported by substantial evidence.  Based

on the opinions of Dr. Webster and Dr. Kehrli, the absence of supporting medical evidence and

treatment from 2004 to 2006, and Dr. Reagan's brief, conclusory June 28, 2005 assessment, I

find no error in the ALJ's rejection of Dr. Reagan's opinions.

---

[6]In his December 29, 2004 notes, Dr. Reagan observes that Plaintiff has "fairly good back
range of motion." Tr. 253.  In addition, Dr. Reagan makes no mention of any back, shoulder, leg,
or arm pain in his notes for Plaintiff's March 16, 2005 and April 27, 2005 visits.  Tr. 251-52.

E. Step Four: Past Relevant Work

Plaintiff argues that the ALJ's conclusion that Plaintiff could perform past relevant work was erroneous because the ALJ: (1) improperly relied on the vocational expert's answers to legally inadequate hypothetical questions, which failed to incorporate more significant limitations regarding Plaintiff's use of her right shoulder; and (2) failed to properly classify the exertional level of Plaintiff's past work experience as a switchboard telephone operator. These arguments lack merit.

Hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant. DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991). The ALJ is not required, however, to include limitations that are not supported by substantial evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006); see also Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (holding that it is "proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record."). In Osenbrock, the Ninth Circuit held that the ALJ properly omitted a mental impairment from the hypothetical question because the claimant's depression was a mild impairment, which did not significantly interfere with his ability to perform most work-related activities. Osenbrock, 240 F.3d at 1165. The omission of depression from the hypothetical was therefore supported by substantial evidence. Id.

As an initial matter, the ALJ in this case did, in fact, include limitations related to Plaintiff's shoulder pain and her ability to reach in each of his hypothetical questions to the vocational expert. See Tr. 296-97 (limited reaching overhead). In light of his ultimate conclusion that Plaintiff's shoulder problems were non-severe, however, the ALJ properly

excluded Plaintiff's allegedly "more significant limitations regarding the use of her right

shoulder." Pl.'s Br. at 11.  As discussed <u>supra</u>, the ALJ's decision regarding Plaintiff's shoulder

problems is supported by substantial evidence in the record.

I find that the ALJ properly included in his hypothetical only those limitations supported

by substantial evidence.  Like the omission of the claimant's non-severe depression from the

hypothetical in <u>Osenbrock</u>, the ALJ in this case found that Plaintiff's shoulder sprain was non-

severe and therefore appropriately omitted reference to Plaintiff's alleged complete inability to

reach in any direction.   Because the "hypothetical that the ALJ posed to the vocational expert

contained all of the limitations that the ALJ found credible and supported by substantial evidence

in the record," the ALJ did not err in excluding Plaintiff's alleged shoulder impairments from the

hypothetical.  <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

Plaintiff also contends that the ALJ erred in classifying Plaintiff's work as a telephone

switchboard operator as sedentary.  A review of the July 24, 2006 hearing transcript, however,

reveals that this argument is without merit.  Initially, the vocational expert classified Plaintiff's

prior switchboard work as medium in exertion.  Tr. 294.  The ALJ asked the vocational expert to

explain that classification, and the vocational expert responded that in her work history report,

Plaintiff indicated that she lifted and carried 25 to 50 pound books at one of her jobs, which

would place the work at the medium exertion level.  Plaintiff testified, however, that she did not

lift any books while working as a telephone switchboard operator.  Based on Plaintiff's own

testimony, the vocational expert then said that Plaintiff's prior work as a telephone switchboard

operator was sedentary.  Plaintiff's argument that the ALJ improperly relied on his own

experience or evidence outside the record is without merit.

PAGE 24 - OPINION AND ORDER

In the alternative, Plaintiff argues that based on the work she actually performed as a telephone switchboard operator, the ALJ erroneously classified the work as sedentary. Plaintiff asserts that she could not return to the constant, repetitive motion of inserting and removing telephone cables from a switchboard. In determining whether a claimant is able to return to past relevant work, however, the ALJ must consider whether the claimant is able to perform "(1) [t]he actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61). Here, the ALJ concluded that Plaintiff could return to a job as telephone switchboard operator, as that job is generally performed in the national economy. As such, the argument is without merit.

## VI. Conclusion

The court finds that the Commissioner's decision denying Plaintiff's Social Security disability claim is based on proper legal standards and supported by substantial evidence in the record. Therefore, the court AFFIRMS the decision.

IT IS SO ORDERED.

Dated this _____5ᵗʰ_____ day of March, 2009.


    /s/ Garr M. King
              Garr M. King
        United States District Judge